## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH PATRICK GUERRIERO,

       Plaintiff.

  v.

LOCK HAVEN UNIVERSITY OF
PENNSYLVANIA,
PENNSYLVANIA STATE SYSTEM
OF HIGHER EDUCATION,

       Defendants.

No. 4:16-CV-0740

(Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 11, 2017

## I.    BACKGROUND

When the Civil Rights Act of 1964 was passed, then President Lyndon B. Johnson said at its signing: "This Civil Rights Act is a challenge to all of us to go to work in our communities and our States, in our homes and in our hearts, to eliminate the last vestiges of injustice in our beloved country." The purpose of "Title VII is [] to help ensure equality in the workplace by removing barriers that have yielded systematic inequality in that setting." [1]

---

[1]    Henry L. Chambers, Jr., The Supreme Court Chipping Away at Title VII: Strengthening It or Killing It?, 74 La. L. Rev. 1161, 1163 (2014).

Curiously, this is the third statutory retaliation action Joseph Patrick

Guerriero has filed against his employer[2] in his less than one score tenure with

Lock Haven University.  Defendants have filed a motion to dismiss Guerriero's

amended complaint, which, although this action has strayed far from the intent of

the statue, nevertheless survives.

## II.     DISCUSSION

### A.     Motion to dismiss standard of Review

When considering a motion to dismiss for failure to state a claim upon which

relief may be granted,[3] a court assumes the truth of all factual allegations in a

plaintiff's complaint and draws all inferences in favor of that party;[4] the court does

not, however, assume the truth of any of the complaint's legal conclusions.[5]  If a

complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if

---

[2]   Plaintiff, Joseph Patrick Guerriero, hereinafter "Guerriero," has been employed by Defendant Lock Haven University of Pennsylvania, hereinafter "LHU," since 1998.   Guerriero first filed a complaint against LHU in 2003, pursuant to the retaliation provisions of both Title VII and the PHRA.   This action was settled by the parties, and subsequently dismissed in accordance with the settlement agreement in 2006.

In 2008, Guerriero filed a second action against LHU.  The 2008 action was, again, premised as a claim of retaliation in violation of Title VII and the PHRA.  It also proceeded as a breach of contract action for breach of the 2006 settlement agreement.  On November 10, 2009, following a jury trial, a verdict of sixty-thousand dollars ($60,000) was returned in favor of Guerriero.

[3]   Federal Rule of Civil Procedure 12(b)(6).

[4]   *Phillips v. Cnty. Of Allegheny*, 616 F.3d 224, 228 (3rd Cir. 2008).

[5]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

they allow the court to infer the defendant's liability – the motion is denied; if they

fail to do so, the motion is granted.[6]

Here, Defendants argue that Plaintiff did not establish a prima facie case; he

is not required to do so, however, on a Rule 12(b)(6) motion.  The United States

Court of Appeals for the Third Circuit clarified this point last year, stating "a

complaint need not establish a prima facie case in order to survive a motion to

dismiss."[7]   What is more, a "retaliation claim may survive [a] motion to dismiss if

[Plaintiff] pleads sufficient factual allegations to raise a reasonable expectation that

discovery will reveal evidence of the following elements: (1) [Plaintiff] engaged in

conduct protected by Title VII; (2) the employer took adverse action against

[Plaintiff]; and (3) a causal link exists between her protected conduct and the

employer's adverse action."[8]  Moreover, "Twombly and Iqbal distinguish between

legal conclusions, which are discounted in the analysis, and allegations of

historical fact, which are assumed to be true even if "unrealistic or nonsensical,"

"chimerical," or "extravagantly fanciful."[9]

---

[6]    *Id.*

[7]    *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (Jordan, J.)

[8]    *Id.*  at 789.

[9]    *Id. citing Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937.

## B. Retaliation under Title VII and PHRA

Justice Stephen Breyer speaking for the Supreme Court of the United States in the seminal case of *Burlington N. & Santa Fe Ry. Co. v. White*, explained, "the antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."[10] "The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct."[11]

Section 704(a) sets forth Title VII's antiretaliation provision in the following terms:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[12]

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."[13] Justice Breyer continued, "in our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might

---

[10]  548 U.S. 53, 63, (2006) (Breyer, J.).

[11]  *Id.*

[12]  42 U.S.C.§ 2000e–3(a).

[13]  *Burlington N. & Santa Fe Ry. Co*, at 67.

have dissuaded a reasonable worker from making or supporting a charge of discrimination..”[14] “We speak of material adversity because we believe it is important to separate significant from trivial harms.”[15] “Title VII, we have said, does not set forth “a general civility code for the American workplace.”“ [16] “An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.”[17] “The antiretaliation provision seeks to prevent employer interference with “unfettered access” to Title VII's remedial mechanisms.”[18] “It does so by prohibiting employer actions that are likely “to deter victims of discrimination from complaining to the EEOC,” the courts, and their employers.”[19] “And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.”[20]

Justice Breyer concluded, noting:

We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective….

---

[14]  *Id.* at 68.

[15]  *Id.*

[16]  *Id. citing Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998).

[17]  *Burlington N. & Santa Fe Ry. Co.* at 68, *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that “courts have held that personality conflicts at work that generate antipathy” and “ ‘snubbing’ by supervisors and co-workers” are not actionable under § 704(a)).

[18]  *Burlington N. & Santa Fe Ry. Co.* at 68*, citing Robinson,* 519 U.S. 337, 346 (1997).

[19]  *Id.*

[20]  *Burlington N. & Santa Fe Ry. Co*., at 68, See 2 EEOC 1998 Manual § 8, p. 8–13.

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale, supra*, at 81–82, 118 S.Ct. 998. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. *Cf., e.g., Washington, supra*, at 662. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. *See* 2 EEOC 1998 Manual § 8, p. 8–14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra*, at 661.[21]

The elements of retaliation are the same for both Plaintiff's Title VII and PHRA claims.[22] As set forth above, the elements are "(1) plaintiff engaged in conduct protected by Title VII; (2) the employer took adverse action against plaintiff; and (3) a causal link exists between plaintiff's protected conduct and the employer's adverse action."[23]

---

[21] *Burlington N. & Santa Fe Ry. Co.*, at 68.

[22] "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. Lafayette College*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) (*citing Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts." *Kelly*, 94 F.3d at 105.

[23] *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.1994).

For purposes of the instant motion, Defendants concede that Plaintiff has stated a claim satisfying the first two elements. Defendants argue that Plaintiff has not stated a claim for the third element, the causal link.

A plaintiff may establish the requisite causal connection between a protected activity and an adverse employment action through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[24] Alternatively, in the absence of such evidence, the plaintiff can satisfy this element if "from the 'evidence gleaned from the record as a whole,' a trier of fact can infer causation."[25]

**C. Much of Guerriero's allegations were not administratively exhausted**

Before turning to whether or not Guerriero has stated a claim for retaliation, I note first that many of his allegations were not brought before the EEOC and, therefore, not administratively exhausted. "Before filing suit under Title VII and the PHRA, [Plaintiff's must] timely exhaust each statute's administrative remedies."[26] "Under Title VII, a claimant must file an EEOC charge reporting unlawful employment practices within 300 days of the challenged conduct;"[27] the

---

[24] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[25] *Id.* (*quoting Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)).

[26] *Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017) *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997).

[27] *Clarkson,* at 114, *see* 42 U.S.C. § 2000e-5(e)(1).

same time limit applies under the PHRA because Plaintiff here cross-filed with the two agencies. "Promotion decisions are subject to these time limitations and accrue when the claimant was denied the promotion, not when the claimant discovers the allegedly unlawful basis for the decision."[28]

Here, Guerriero filed his Notice of Charge of Discrimination to the EEOC/PHRC on March 16, 2015. The text of his charge reads as follows:

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.    I have been employed by Respondent since about July 1988 until the present. I was hired as a Residence Hall Director, and I am currently an Assistant Professor. During my employment with Respondent, I filed charges of discrimination and court complaints against Respondent. Since participating in the protected activity of filing charges of discrimination and filing complaints in court, I have been subjected to retaliation and harassment daily, weekly, and monthly.

II.    In March 2014, after I was not considered for a new position, Respondent's Vice President for University Relations, Rodney Jenkins, told me that he wished he could tell me what Respondent's upper management are doing to me. Then, from about March 2014 until about May 2014, Dean Stephen Neun, told me that he would have to find something new for me to do. Despite my opposition and complaints, I was never given any reason as to why I was not assigned a new position. I should have been put back in a position closely related to the one from which I was previously forced transferred.

III.    I believe that I have been subjected to retaliation because I have opposed what I reasonably and in good faith believed to be an unlawful employment practice, and because I have participated in the EEO process, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[29]

Accordingly, most of Guerriero's allegations must be dismissed as not having been administratively exhausted. Specifically, ¶ 15-16 being treated dismissively in 2011; ¶ 17- 20 unfounded allegations against him in 2011; ¶21-22 not being offered "the chance to interview" for Athletic Director in 2012; ¶24-26

---

[28]   *Clarkson* at114, *see Noel v. The Boeing Co.*, 622 F.3d 266, 270-71, 275 (3d Cir. 2010).

[29]   ECF No. 23-1 at 3.

not being "spoken to" about the position of Summer Camps Director in 2013; ¶27-29 being denied voluntary work in athletics in 2013; ¶30-33 being told by the Vice President of University Relations in January 2014 that he could not work in athletics .[30]

Although, as discussed below, Guerriero may continue to use these allegations as evidence part of a 'pattern' of antagonism, he did not administratively exhaust these allegations; these allegations in and of themselves cannot be the basis for liability against Defendants.

### D. Guerriero has stated a claim for retaliation under Title VII and the PHRA.

As to the exhausted allegations of discrimination they are set forth, as follows:

> Plaintiff alleges that a Dean, Steve Neun, "despite specifically referring to Plaintiff's resume as "impressive" and indicative of a "renaissance man", advised Plaintiff that, after speaking with others in the administration, there was no way that Plaintiff would resume working in Athletics."[31]

> Plaintiff further alleges that "In the Spring of 2015, Defendants' Clearfield branch campus celebrated their 25th Anniversary. Despite being the founding Director and CEO of the Clearfield branch campus and remaining in such a capacity for seven years, Plaintiff was not invited to the 25th Anniversary."[32]

---

[30]  Amd. Compl., ECF No. 17.

[31]  Amd. Compl. ECF No. 17 ¶ 36.

[32]  Amd. Compl. ECF No. 17 ¶ 37-38.

Finally, Plaintiff alleges that "Plaintiff submitted his application for Defendants' opening Athletic Director position. Prior to submitting his application, Plaintiff spoke to Women's Head Soccer Coach and a member of the search committee for the Athletic Director's position, Rob Eaton. While communicating to Plaintiff that, going forward, he could not speak to any prospective applicants, Mr. Eaton did inform Plaintiff that, based on his resume and previous experience, he thought Plaintiff would be a "leading candidate." On July 4, 2015, Plaintiff received an email from Defendants stating that Plaintiff was no longer being considered for the position of Athletic Director."[33]

As discussed, *supra*., a plaintiff may establish the requisite causal connection between a protected activity and an adverse employment action through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[34] The timing of the present allegations is so many years removed from the first actions, that Guerriero cannot establish causal connection through timing alone.

Alternatively, in the absence of such evidence, the plaintiff can satisfy this element if "from the 'evidence gleaned from the record as a whole,'" a trier of fact can infer causation.[35] Recently, the Third Circuit has reaffirmed this concept, regarding retaliation generally, stating "if temporal proximity is not unusually suggestive, then "timing plus other evidence" can suggest a pattern of antagonism

---

[33] Amd. Compl. ECF No. 17 ¶ 41-4.

[34] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[35] *Id*. (quoting *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 281 (3d Cir.2000)).

sufficient to establish causation."[36]  "Such evidence is "not limited to evidence of

timing or demonstrative proof" of animus or retaliatory motive, but instead

includes evidence "gleaned from the record as a whole" that may support an

inference of causation."[37]

I conclude that the exhausted factual allegations, coupled with a potential

pattern from the non-exhausted claims, could lead a trier of fact to infer causation;

consequently, this case must necessarily survive the motion to dismiss.

## III.  CONCLUSION

Although I believe that this action has strayed far beyond the noble intent of

Title VII of  the Civil Rights Act, Plaintiff has, at this stage of the proceedings,

stated a plausible claim for retaliation.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[36]  *Roseberry v. City of Philadelphia*, ___ Fed. Appx. ___,  2017 WL 5644366, at *2 (3d Cir. Nov. 24, 2017)

[37]  *Id.citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).