# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH PATRICK GUERRIERO,    :    CIVIL NO: 4:16-CV-00740
:
        Plaintiff    :
:    (Chief Magistrate Judge Schwab)
        v.    :
:
LOCK HAVEN UNIVERSITY OF    :
PENNSYLVANIA, *et al.*,    :
:
        Defendants    :
:

## MEMORANDUM OPINION

## I. Introduction.

The plaintiff Joseph Patrick Guerriero claims that his employer retaliated against him because of his prior grievances and prior lawsuits. Three claims of retaliation remain. Currently pending is the defendants' motion for summary judgment. Because Guerriero has not presented evidence to support his claims, we will grant the defendants summary judgment as to the two claims as to which they moved for summary judgment. But we will not grant the defendants summary judgment as to the third remaining claim, which the defendants fail to even mention in their motion for summary judgment. We will, however, order Guerriero to show cause, if there is any, why the Court should not enter summary judgment in favor of the defendants as to that claim.

## II. Background and Procedural History.

Guerriero began this action by filing a complaint naming as defendants Lock Haven University of Pennsylvania and the Pennsylvania State System of Higher Education. Judge Brann granted the defendants' motion to dismiss the complaint, but he granted Guerriero leave to file an amended complaint. On May 24, 2017, Guerriero filed an amended complaint naming the same two defendants. He claims that the defendants retaliated against him because of his prior grievances and lawsuits in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann.§ 951 *et seq.*

Guerriero claims that the defendants retaliated against him in numerous ways. In connection with the defendants' motion to dismiss the amended complaint, Judge Brann concluded that Guerriero failed to administratively exhaust his claims as to most of the ways he contends the defendants retaliated against him:

> [M]ost of Guerriero's allegations must be dismissed as not having been administratively exhausted. Specifically, ¶ 15-16 being treated dismissively in 2011; ¶ 17-20 unfounded allegations against him in 2011; ¶21-22 not being offered "the chance to interview" for Athletic Director in 2012; ¶24-26 not being "spoken to" about the position of Summer Camps Director in 2013; ¶27-29 being denied voluntary work in athletics in 2013; ¶30-33 being told by the Vice President of University Relations in January 2014 that he could not work in athletics.

*Doc. 28* at 8–9 (footnote containing a citation to the amended complaint omitted).

Judge Brann concluded that Guerriero may use those allegations "as evidence of a 'pattern' of antagonism," but because "he did not administratively exhaust [those] allegations," they "in and of themselves cannot be the basis for liability against Defendants." *Id*. at 9.

Judge Brann then turned to whether Guerriero's amended complaint stated claims as to the incidents of retaliation that were administratively exhausted, and in the process, he summarized the three incidents of retaliation that Guerriero had administratively exhausted:

> Plaintiff alleges that a Dean, Steve Neun, "despite specifically referring to Plaintiff's resume as "impressive" and indicative of a "renaissance man", advised Plaintiff that, after speaking with others in the administration, there was no way that Plaintiff would resume working in Athletics."
>
> Plaintiff further alleges that "In the Spring of 2015, Defendants' Clearfield branch campus celebrated their 25th Anniversary. Despite being the founding Director and CEO of the Clearfield branch campus and remaining in such capacity for seven years, Plaintiff was not invited to the 25th Anniversary."
>
> Finally, Plaintiff alleges that "Plaintiff submitted his application for Defendants' opening Athletic Director position. Prior to submitting his application, Plaintiff spoke to Women's Head Soccer Coach and a member of the search committee for the Athletic Director's position, Rob Eaton. While communicating to Plaintiff that, going forward, he could not speak to any prospective applicants, Mr. Eaton did inform Plaintiff that, based on his resume and previous experience, he thought Plaintiff would be a "leading candidate." On July 4, 2015, Plaintiff received an email from Defendants stating that

> Plaintiff was no longer being considered for the position of
> Athletic Director."

*Id*. at 9–10 (footnotes containing citations to the amended complaint omitted).

Concluding that "Guerriero cannot establish [a] causal connection through timing alone" but that "the exhausted factual allegations, coupled with a potential pattern from the non-exhausted claims, could lead a trier of fact to infer causation," Judge Brann concluded that Guerriero "stated a plausible claim for retaliation." *Id*. at 10–11. Thus, he granted in part and denied in part the defendants' motion to dismiss the amended complaint.

Following Judge Brann's decision on the motion to dismiss the amended complaint, three retaliation claims remain: (1) the claim based on Dean Neun advising Guerriero that there was no way that Guerriero would resume working in Athletics; (2) the claim based on Guerriero not being invited to the 25th Anniversary of the Clearfield branch campus; and (3) the claim based on Guerriero not being interviewed for or hired as the Athletic Director in 2015.

After the defendants filed an answer to the amended complaint, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned for all further proceedings. We gave the parties time to conduct discovery. After the discovery period ended, the defendants filed a motion for summary judgment, which the parties have fully briefed.

### III. Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248–49.  When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must

rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.* The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Here, the defendants filed a statement of material facts in support of their motion for summary judgment. Guerriero has not, however, filed a response to the defendants' statement of material facts. Thus, in accordance with Local Rule 56.1,

we deem Guerriero to have admitted the following facts set forth by the

defendants.[1]

## A. Guerriero's Background and Employment with Lock Haven University.

Guerriero graduated with a B.S. degree from Lock Haven University and a

M.A. degree from California University of Pennsylvania in 1988. *Doc. 53*

(Statement of Material and Undisputed Facts Filed by Defendants in Support of

their Motion for Summary Judgment) at ¶ 3. He began employment with Lock

Haven University in 1988, and he remains employed by Lock Haven University.

---

[1] In his brief in opposition to the motion for summary judgment, Guerriero cites to and attempts to "incorporate by reference" facts set forth in his amended complaint. *See Doc. 62* at 2. But a party opposing a motion for summary judgment, "'may not rest upon the mere allegations or denials of his pleadings.'" *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014) (quoting *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)). While a nonmoving party may not rely on mere allegations in a complaint to create a genuine factual dispute at the summary-judgment stage, where the complaint is verified, the court treats specific, factual allegations in the complaint that are based on personal knowledge as if they were made in an affidavit or declaration. *See Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements in verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit."); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit in opposition to a motion for summary judgment). Here, Guerriero did not sign his amended complaint under penalty of perjury. Thus, we do not consider the allegations in his amended complaint as proper summary-judgment evidence. *See United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019) (holding that "while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot").

*Id*. at ¶ ¶ 4–5.  Based upon Guerriero's employment contract, he is employed for nine months during the school year, and he may seek additional income by applying for various summer jobs with the University. *Id*. at ¶¶ 6–7.  Since 2010, he has been a tenured Assistant Professor, and his benefits have been provided in accordance with a collective bargaining agreement. *Id*. at ¶ 8–9.  He receives two personal days for each nine-month contract, but he receives no personal days or vacation time during the summer contracts with the University. *Id*. at ¶¶ 10–11.

For the nine-month contract from September 2010 until May of 2011, Guerriero received a pay raise. *Id*. at ¶ 23.  From September 25, 2010, until October 10, 2010, his pay was $73,712, but beginning on October 11, 2010, his pay went up to $76,661. *Id*.  During this nine-month contract, Guerriero's job responsibilities were with the Haven Achievers Program. *Id*. at ¶ 24.  During the summer of 2011, Guerriero was employed by the University in the Summer Telecom Retention Program, and his salary was $5,059.29. *Id*. at ¶¶ 25–26.

For the nine-month contract from September 2011, until May 2012, Guerriero's salary was $76,661.00, and his job responsibilities were still with the Haven Achievers Program. *Id*. at ¶¶ 27–28.  For the summer of 2012, his employment was with the Summer Telecom Retention Program, and his salary was $5,059.29. *Id*. at ¶¶ 29–30.

For the nine-month contract from September 2012, until May of 2013, Guerriero's salary increased to $77,427.00, and his job responsibilities remained with the Haven Achievers Program. *Id*. at ¶¶ 31–32. Guerriero was not employed with the University during the summer of 2013. *Id*. at ¶ 33. Although Guerriero had applied to be the Director of Summer Camps for the Lock Haven Foundation, he was not selected, and he did not apply for any other summer positions. *Id*. at ¶¶ 34–35.

For the nine-month contract from September 2013, until May 2014, Guerriero's salary increased to $78,202.00, and his job responsibilities were with the Haven Achievers Program-General Student Population, Haven Achievers Program, and Professional Development. *Id*. at ¶¶ 36–37. For the summer of 2014, Guerriero was the Academic Improvement Plan (AIP) Coordinator, and his salary was $1,792.12. *Id*. at ¶¶ 38–39.

For the nine-month contract from September 2014 until May 2015, Guerriero's salary increased to $79,766.00, and he was the AIP Coordinator and his job responsibilities included classroom instruction. *Id*. at ¶¶ 40–41. For the summer of 2015, Guerriero was the AIP Coordinator, and his salary was $7,311.88. *Id*. at ¶¶ 42–43.

For the nine-month contract from September 2015, until May 2016, Guerriero's salary was $79,766.00, and he was the AIP Coordinator and his job

responsibilities included development of AIP process outcomes and classroom instruction. *Id*. at ¶¶ 44–45.   For the summer of 2016, his salary was $7,311.88. *Id*. at ¶ 46.

For the nine-month contract from September 2016, until May of 2017, Guerriero's salary increased to $81,959.00, and he was the AIP Coordinator and his job responsibilities included classroom instruction. *Id*. at ¶¶ 47–48.  For the summer of 2017, Guerriero's job responsibilities were as AIP Coordinator and two hours of teaching, and his salary was $11,269.38. *Id*. at ¶¶ 49–50.

For the nine-month contract from August 19, 2017, until May 25, 2018, Guerriero requested and received sabbatical leave pursuant to his contract, and his salary was $83,599.00. *Id*. at ¶ 51.  For the summer of 2018, Guerriero's job responsibilities were as Educational Opportunity Program (EOP) Director, Training and Shadowing, and AIP Coordinator, and his salary was $11,494.80. *Id*. at ¶¶ 52–53.

Guerriero's salary increased during nine-month contract from September 2018, until May 2019. *Id*. at ¶ 54.  From September 2018, to February 15, 2019, his salary was $83,599.00, but beginning on February 16, 2019, his salary increased to $85,688. *Id*.  Guerriero's job responsibilities were as ACT 101 Director and AIP Coordinator. *Id*. at ¶ 55.

Lock Haven University last evaluated Guerriero during the 2012-2013 school year. *Id*. at ¶ 12.  On his evaluation, there were no negative marks, only positive marks. *Id*. at ¶ 13.  He has not received another evaluation since because evaluations occur every five years, and 2019 is his evaluation year. *Id*. at ¶ 14. Even though the five-year period for Guerriero's next evaluation would have been 2018, his evaluation year was moved to 2019 due to his sabbatical. *Id*. at ¶ 15.

During the timeframe relevant to his amended complaint, Guerriero has been employed by Lock Haven University the entire time, he did not receive a bad evaluation, his salary has not gone down, his health benefits have not changed, and his sick-time and vacation accrual has not changed. *Id*. at ¶ 17.

## B.  Guerriero's prior lawsuits.

Guerriero filed two lawsuits in this court before the current suit. *Id*. at ¶ 18. The first lawsuit—*Guerriero v. Lock Haven University of Pennsylvania et al*, 4:03-cv-00508-JEJ—concluded on August 18, 2006, with an Order of Settlement Terminating the Case. *Id*. at ¶¶ 19–20.  In the second lawsuit—*Guerriero v. Lock Haven University of Pennsylvania*, 4:08-cv-01253-JEJ—a judgment was issued on November 10, 2009. *Id*. at ¶¶ 21–22.

## C. The Search for a New Athletic Director.

A search committee of seven individuals from Lock Haven University was formed to find a qualified applicant for the Athletic Director position. *Id*. at ¶ 56. The chairman of the search committee was Michael G. Nestor, who received approval from the Human Resources Department for a ranking/point system to use to score each applicant. *Id*. at ¶¶ 57–58. Each search committee member reviewed and scored each of the twenty-five resumes that they received. *Id*. at ¶ 59. Mr. Nestor took all these scores and made a spreadsheet that contained the names and scores of all twenty-five applicants. *Id*. at ¶ 60.

After the scoring was complete, the search committee met to discuss the twenty-five applicants and their individual scoring. *Id*. at ¶ 61. During this meeting, Guerriero's lawsuits were not discussed. *Id*. at ¶ 62. The search committee ranked Guerriero 14 out of 25 on the list of applicants. *Id*. at ¶ 63. Of the twenty-five applicants, the applicants with the top ten scores were moved on to the phone-interview stage. *Id*. at ¶ 64. Since Guerriero was 14th on the list, he was not moved on to the phone-interview stage. *Id*. at ¶65.

### 1. Qualifications of the top ten applicants

The top ten applicants had the following education and experience:

• Dr. Tom Gioglio—Doctorate of Education—17 years of experience as an Athletic Director.

• Dr. Michael Theulan—Doctorate of Physical Education—6 years of experience as an Athletic Director.

• Mr. Doug Young—Master's Degree in Sports Administration—12 years of experience as an Athletic Director and 4 years as an Associate Athletic Director.

• Mr. James Fallis—Master's Degree in Education—26 years of experience as an Athletic Director.

• Mr. Terrence Beattie—Master's Degree in Sports Administration—5 years of experience as an Associate Athletic Director and 10 years as an Assistant Athletic Director.

• Mr. Rahaan Carlton—Master's Degree in Education— 10 years of experience as an Athletic Director.

• Mr. Todd Garzarelli—Master's Degree in Sports Administration—8 years of experience as an Associate Athletic Director.

• Mr. Juan Carloa Mascaro—Master's Degree in Applied Economics—8 years of experience as an Athletic Director.

• Mr. Douglas Palmer—Master's Degree in Athletic Administration—6 years of experience as an Athletic Director, 6 years of experience as an Associate Athletic Director, 13 years of experience as an Assistant Athletic Director.

• Ms. Lauren Packer—Master's Degree in Communications Studies—1 year of experience as an Associate Athletic Director, 2 years of experience as an Assistant Athletic Director, 5 months as an Athletic Director of Communications, and 2 years as the Director of Media Relations at the Pennsylvania State Athletic Conference.

*Id*. at ¶¶ 66–75.

## 2. Guerriero's Qualifications.

Guerriero had a Master's Degree in Geography and Regional Planning, and he had 39 months of experience as an Assistant Athletic Director. *Id*. at ¶ 76. His most recent experience as an Assistant Athletic Director was from 2001. *Id*. at ¶ 77.

## D. Investigation into Possible NCAA Violations.

Timothy P. Fogarty investigated possible NCAA violations by Guerriero. *Id*. at ¶ 78. The investigation was initiated based upon an email (dated September 19, 2011) from Guerriero that stated that he gave Lock Haven athletes $400 to $500 and food from his freezer. *Id*. at ¶ 79. Guerriero also sent an email on March 7, 2007, in which he discussed giving about $100 worth of food as well as money to student athletes. *Id*. at ¶ 80.

Mr. Fogarty concluded that Guerriero was either unable to clearly understand and differentiate the NCAA regulations or he believes that any attempt to help a student athlete overrides the need to comply with the NCAA rules. *Id*. at ¶ 81. Mr. Fogarty recommended that the Athletic Director or other appropriate official provide a reasonable number of training sessions to Lock Haven employees on NCAA regulations. *Id*. at ¶ 82.

Guerriero was required to go to NCAA training, and he believed that this was discipline. *Id*. at ¶ 83.

**E. Investigation of the President of Lock Haven University and Lock Haven University.**

After Guerriero made allegations against the President of Lock Haven University and Lock Haven University, the Vice Chancellor of the Pennsylvania State System of Higher Education appointed a neutral third party to investigate the matter. *Id*. at ¶ 84. The investigator was Holly M. McCoy of Slippery Rock University. *Id*. at ¶ 85.

Guerriero's allegations centered around the University not putting him into a position in the Athletics Department. *Id*. at ¶ 86. Guerriero has not worked in a paid position in Lock Haven University's athletic department since 2001. *Id*. at ¶ 90.

Ms. McCoy interviewed nine individuals including Guerriero as part of her investigation. *Id*. at ¶ 87. Ms. McCoy's investigation, which concluded on July 23, 2015, revealed no evidence of any Lock Haven manager or staff member engaging in discriminatory or retaliatory actions towards Guerriero. *Id*. at ¶¶ 88–89.

**V. Discussion.**

As set forth above, following Judge Brann's decision on the motion to dismiss the amended complaint, three retaliation claims remain: (1) the claim based on Dean Neun advising Guerriero that there was no way that Guerriero would resume working in Athletics; (2) the claim based on Guerriero not being

invited to the 25th Anniversary of the Clearfield branch campus; and (3) the claim based on Guerriero not being interviewed for or hired as the Athletic Director in 2015. We address each of these claims, starting with the last one.

### A. The Claim Based on Guerriero Not Being Interviewed for or Hired as the Athletic Director in 2015.

The defendants contend that they are entitled to summary judgment as to the claim based on Guerriero not being interviewed for or hired as the Athletic Director in 2015 because Guerriero cannot establish a prima facie case of retaliation and, even assuming that he can establish a prima facie case of retaliation, Lock Haven had a legitimate non-retaliatory reason for not interviewing him or hiring him as the Athletic Director.

Title VII prohibits an employer "from retaliating against an employee for complaining about, or reporting, discrimination or retaliation." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017) (citing 42 U.S.C.A. § 2000e-3).[2] Where, as here, the plaintiff seeks to prove his or her claim using

---

[2] We explicitly refer to only Title VII because the same framework that applies to Guerriero's Title VII retaliation claims applies to Guerriero's PHRA retaliation claims. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 792 n.9 (3d Cir. 2016) ("[A]lthough Connelly's retaliation claims are advanced under both Title VII and the PHRA, we refer to those claims in the singular because the same framework for analyzing retaliation claims applies to both.").

indirect evidence, the *McDonnell Douglas*[3] burden-shifting analysis applies. *Id*. at

257. That analysis has three stages: (1) the plaintiff must establish a prima facie

case of retaliation; (2) if the plaintiff succeeds in establishing a prima facie case,

"the burden of production of evidence shifts to the employer to present a

legitimate, non-retaliatory reason for having taken the adverse action"; and (3) "[i]f

the employer advances such a reason, the burden shifts back to the plaintiff to

demonstrate that 'the employer's proffered explanation was false, and that

retaliation was the real reason for the adverse employment action.'" *Daniels v. Sch.*

*Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v.*

*Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). "Although the

burden of production of evidence shifts back and forth, the plaintiff has the

ultimate burden of persuasion at all times." *Id.*

### 1. Guerriero Cannot Establish a Prima Facie Case.

To establish a prima facie case of retaliation, a plaintiff must show that

(1) he engaged in protected activity under Title VII; (2) the employer took an

adverse action against him; and (3) there was a causal connection between the

employee's protected activity and the adverse employment action. *Wilkerson v.*

*New Media Technology Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

For purposes of their motion for summary judgment, the defendants do not dispute that Guerriero can satisfy the first two elements of a prima facts case as to his claim that he was not interviewed for or hired as the Athletic Director in 2015. But they contend that Guerriero cannot satisfy the third element, the causal-connection element.

"The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext." *Carvalho-Grevious*, 851 F.3d at 257. Although under Title VII, a plaintiff claiming retaliation must ultimately prove that "his or her protected activity was a but-for cause of the alleged adverse action by the employer," *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), at the prima facie stage, "a lesser causal burden" applies. *Carvalho-Grevious*, 851 F.3d at 259. "[A]t the prima facie stage the plaintiff must produce evidence 'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action.'" *Id*. (emphasis in original) (quoting *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

At the prima-facie stage, the "court considers a 'broad array of evidence'" in determining "whether there is a causal connection between the plaintiff's protected activity and the employer's adverse action." *Moody v. Atl. City Bd. of Educ.*, 870

F.3d 206, 221 (3d Cir. 2017) (quoting *Daniels*, 776 F.3d at 196). "In certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra,* 497 F.3d at 302 (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir. 1997)). But "[i]n the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196.

Here, Guerriero has failed to present evidence from which a reasonable trier of fact could conclude that his lawsuits were the likely reason for the defendants not interviewing him or hiring him for the position of Athletic Director. Guerriero does not contend that there is an unusually suggestive temporal proximity between his lawsuits and his not being interviewed for or hired as the Athletic Director in 2015. Rather, he contends that he can show a causal connection through a pattern of intervening antagonism. In support of that assertion, he submits three pieces of evidence.

First, Guerriero submits a September 30, 2013 email exchange between him and Mark C. Sherburne. In Guerriero's initial email to Sherburne, he expresses

interest in returning to a position in athletics, and he suggests that Sherburne ask him for help "even as a volunteer for now." *Doc. 62-2* at 1. In response, Sherburne wrote: "Thanks for the note. As you know, I admire your persistence and appreciate your love for LHU and athletics. Although becoming better settled, my staff is currently set and I do not foresee any needs or openings at the moment— even on a voluntary basis." *Id.*

Second, Guerriero submits an undated email exchange between him and Rodney Jenkins. In Guerriero's initial email to Jenkins, he congratulates Jenkins on being named a vice president, and he asks Jenkins if he had asked about potential positions in athletics for him during a senior staff meeting the day before. *Doc. 62-3* at 1. In response, Jenkins wrote:

> Thanks Pat, I did speak to Mark as well as brought it up with the President. Unfortunately there are no plans to add any positions to athletics. Our current and immediate future budgetary situation prohibits any additions. I am not sure to what extent but I think the Provost is working on a comprehensive plan for academics and student affairs. So, if I were you, I would speak to her.

*Id.*

Third, Guerriero submits one page from what appears to be a longer letter dated March 6, 2012, to Guerriero from the Office of the President of Lock Haven University. *Doc. 62-4* at 1. That letter states, among other things, that the investigation into allegations that Guerriero violated NCAA rules has been

completed, that there is sufficient evidence to support those allegations and the conclusion that Guerriero violated the rules, that no formal discipline will be taken, but that Guerriero is expected to participate in training on the NCAA rules. *Id*.

From Guerriero's evidence, a reasonable trier of fact could not conclude that there was a pattern of intervening antagonism between Guerriero's protected activities and the defendants not interviewing him or hiring him as the Athletic Director. Although Guerriero's evidence shows that Guerriero was unable to secure a position in athletics and that he was found to have violated NCAA rules, it does not raise a reasonable inference of antagonism, must less a pattern of antagonism. Because Guerriero has failed to present evidence from which a reasonable trier of fact could conclude that his lawsuits were the likely reason for the defendants not interviewing him or hiring him for the position of Athletic Director, he cannot establish a prima facie case. Thus, the defendants are entitled to summary judgment.

### 2.  The Defendants have presented legitimate, non-retaliatory reasons.

Even assuming that Guerriero could establish a prima facie case, the defendants have presented legitimate, non-retaliatory reasons for not interviewing him or hiring him as the Athletic Director in 2015.

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. *Id*. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*.

Here, the defendants have presented legitimate non-retaliatory reasons for not interviewing Guerriero or hiring him as the Athletic Director, i.e., that he was ranked 14th on the list of applicants and only the top, ten applicants proceeded to the interview stage and that the applicants that were interviewed (including the one who was hired) had more relevant experience that Guerriero.

### 3. Guerriero has not shown pretext.

If the employer meets its relatively light burden by articulating a legitimate reason for its action, the burden of production rebounds to the plaintiff. To defeat summary judgment the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder reasonably could either (1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a determinative cause of the employer's action. *Daniels,* 776 F.3d at 198–99. To avoid summary judgment, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact finder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (citations omitted). "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) (quoting *Fuentes*, 32 F.3d at 765). Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those asserted reasons. *Fuentes*, 32 F.3d at 765.

Here, Guerriero has not presented evidence from which a reasonable factfinder could conclude that reasons presented by the defendants were pretext for retaliation. As set forth above, Guerriero has presented three pieces of evidence.

And just as that evidence does not support an inference of causation, it does not support an inference that the defendants' reasons for not interviewing or hiring Guerriero as the Athletic Director in 2015 were pretext for retaliation. For this reason also, the defendants are entitled to summary judgment as to the claim based on Guerriero not being interviewed for or hired as the Athletic Director in 2015.

### B. The Claim Based on Dean Neun Advising Guerriero that There Was No Way that Guerriero Would Resume Working in Athletics.

The defendants move for summary judgment as to the claim based on Dean Neun advising Guerriero that there was no way that Guerriero would resume working in Athletics on the basis that Guerriero failed to exhaust administrative remedies as to this claim.

"To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). "The same is required to bring a claim under the PHRA." *Id.* The defendants contend Guerriero failed to exhaust administrative remedies because he did not complain about not being permitted to work in the Athletic Department in his EEOC charge. But that is not the test for exhaustion of administrative remedies in this context. Rather, "'[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Id*. (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir. 1976) (citations omitted). Thus, "[a] plaintiff's claim must thus fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Id*. (quoting *Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir. 1996)). A claim may be considered fairly with the scope of the EEOC complaint or the investigation of that complaint where it "may fairly be considered [an] explanation[ ] of the original charge." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (quoting *Ostapowicz*, 541 F.2d at 399)).

Here, the defendants have not shown that they are entitled to summary judgment on the basis that Guerriero failed to exhaust administrative remedies. Their conclusory assertion that Guerriero failed to exhaust administrative remedies because he did not specifically complain about not working in the Athletic Department in his EEOC charge is unavailing. They do not assert that Guerriero's claim was not fairly with the scope of his charge or the investigation arising therefrom. Moreover, Judge Brann previously concluded that this claim was administratively exhausted. *See doc. 28* at 9. And the defendants have not

presented additional evidence that was not before Judge Brann when he made that decision or any reason for the undersigned to reconsider that decision.[4]

The defendants also contend that even if Guerriero exhausted administrative remedies, they are entitled to summary judgment on the merits because Guerriero does not provide evidence to support this claim. We agree with this contention. As discussed above, Guerriero has presented three pieces of summary-judgment evidence. From that evidence, however, a reasonable trier of fact could not conclude that there was a causal connection between Guerriero's lawsuits and Dean Neun purportedly advising Guerriero that there was no way that he would resume working in Athletics.[5]

---

[4] The defendants also contend that Guerriero failed to administratively exhaust his claim based on the investigation of him regarding NCAA violations, and they seek summary judgment as to that claim. But Judge Brann has already dismissed that claim. As set forth above, in connection with the motion to dismiss the amended complaint, Judge Brann concluded that Guerriero failed to administratively exhaust his claims as to most of the ways he contends the defendants retaliated against him. *See doc. 28* at 8–9. And he specifically listed paragraphs 17 through 20 (the paragraphs that contain Guerriero's factual allegations regarding the investigation of his purported violations of NCAA rules) of the amended complaint as allegations that were not administratively exhausted. *Id.* at 8. Further, in listing the allegations that there were exhausted, Judge Brann did not include the allegations regarding the investigation of Guerriero regarding NCAA violations. Thus, Judge Brann has already dismissed the claim based on the investigation of NCAA violations. Accordingly, we will not further consider that claim.

[5] Guerriero has not pointed to any evidence that Dean Neun so advise him.

**C.  The Claim Based on Guerriero Not Being Invited to the 25th Anniversary of the Clearfield Branch Campus.**

Although the defendants purportedly seek summary judgment as to all remaining claims, *see doc. 54* at 15 (asserting that "Defendants are entitled to judgment in their favor on all counts"), they do not even mention in their briefs the claim based on Guerriero not being invited to the 25th Anniversary of the Clearfield branch campus.  Thus, they have not shown that they are entitled to summary judgment as to that claim.

But the Court may enter summary judgment *sua sponte* "after giving notice and a reasonable time to respond." Fed.R.Civ.P. 56(f); *see also Forrest v. Parry*, No. 16-4351, 2019 WL 2998601, at *12 (3d Cir. July 10, 2019) ("It is well-settled that district courts may grant summary judgment *sua sponte*, so long as the losing party is given notice when summary judgment is being contemplated.").  By this Memorandum, we are giving Guerriero notice that we are considering entering summary judgment as to his claim based on not being invited to the 25th Anniversary of the Clearfield branch campus.

We are considering entering summary judgment on the basis that as to this claim, it does not appear that Guerriero can satisfy either the second or third element of a prima facie case of retaliation.  As to the third element of a prima facie case, i.e., causation, we have set forth the standards above.  As to the second element of a prima facie case, i.e. adverse action, we note the following.  "The

29

antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "For an employer's action to satisfy the second prong of a prima facie case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels*, 776 F.3d at 195 (quoting *Burlington*, 548 U.S. at 68). This standard is an objective one; we examine the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Burlington*, 548 U.S. at 68, 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Further, "[c]ontext matters," and "an act that would be immaterial in some situations [may be] material in others." *Id.* at 69 (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005) (internal quotation marks omitted)). Under this standard, "petty slights, minor annoyances, and simple lack of good manners" are not adverse actions because such would not deter a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68. "By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, . . . this standard will screen out trivial

conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id*. at 69–70.

We will give Guerriero an opportunity to respond. Thus, we will order him to show cause why we should not grant the defendants summary judgment as to his claim based on not being invited to the 25th Anniversary of the Clearfield branch campus.

## VI. Summary.

For the foregoing reasons, we will grant summary judgment to the defendants on two of the three remaining claims. More specifically, we will grant the defendants summary judgment as to Guerriero's claim based on not being interviewed for or hired as the Athletic Director in 2015, and Guerriero's claim based on Dean Neun advising him that there was no way that he would resume working in Athletics. At this time, however, we will not grant the defendants summary judgment as to Guerriero's claim based on not being invited to the 25th Anniversary of the Clearfield branch campus. But we will order Guerriero to show cause why we should not grant the defendants summary judgment as to that last remaining claim. An appropriate order will be issued.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge

31